INTERNATIONAL HARVEST HAT Co. v. UNITED STATES

**No. 4646.**—Invoices dated Tehuacan, Mexico, April 18, May 9, 1936.
        Entered at St. Louis, Mo., May 11, 25, 1936.
        Entry Nos. 1746, 1847.

(Decided on remand (Reap. Dec. 4594) September 29, 1939)

*Tompkins & Tompkins* (*Allerton DeC. Tompkins* of counsel) for the plaintiff.
*Webster J. Oliver*, Assisant Attorney General (*William J. Vitale*, special attorney) for the defendant.

McCLELLAND, Presiding Judge: These are appeals to reappraisement from values found by the United States appraiser at the port of St. Louis on straw or palm-leaf harvest hats imported from Mexico. After an extended hearing at the said port I reached the conclusion that the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, was the proper basis of value of the merchandise, such value being in each case the appraised value. As shown by my opinion printed in Reap. Dec. 4335 the foregoing conclusions were based upon the following facts found by me:

(1) That the merchandise in issue consists of straw or palm-leaf hats imported from Mexico in April and May 1936.

(2) That the principal market for such hats in Mexico at the time of exportation was Tehuacan.

(3) That at such time there was no uniform price at which such or similar merchandise was offered for sale by the collectors of such hats in Tehuacan.

(4) That the prices at which such or similar merchandise was sold or offered for sale in Mexico for home consumption or for exportation to countries other than the United States were lower than the prices at which it was sold for exportation to the United States.

(5) That at the time of exportation in each case there was a price at which such merchandise was freely offered for sale for exportation to the United States to all purchasers in usual wholesale quantities and in the ordinary course of trade by the dealers in such hats in Tehuacan, and that such price equalled the appraised values.

From my decision an application for review was duly filed, and after argument thereon before division two of this court my decision was reversed, the closing paragraph of the opinion upon which the reversal was based, which was written by Tilson, J., and concurred in by his associates, being as follows:

For the reasons stated, the decision and judgment of the trial court is reversed and the case remanded with instructions to admit in evidence the price lists, quotations, or affidavits, now marked exhibits 8, 9, 10, 11, and 12 for identification, and make new findings of fact after weighing said price lists, quotations, or affidavits, together with the other evidence in this case, and in the light of the other observations made in this opinion.

A very common saying, and one worthy of general acceptation, is that "A man convinced against his will is of the same opinion still." After a careful reading of the opinion of the division aforesaid I am still convinced that Exhibits 8, 9, 10, 11, and 12 for Identification were properly excluded by me, but notwithstanding that fact I, in obedience to the division's direction, admit in evidence these exhibits, and after giving what I believe to be due consideration thereto and to the other evidence in the case I adhere to my former conclusion that export value as defined in section 402 (d) of the Tariff Act of 1930 is the proper basis of value of the merchandise in issue, and that such value for each of the items involved was the appraised value. In order that my reasons therefor may be made clear I deem the following observations worthy of mention:

It is manifest from a reading of the division's opinion that the reversal of my decision was based largely upon my refusal to admit the aforementioned exhibits, and yet, after renewed consideration of the affidavits and schedules attached thereto which constitute such exhibits, I cannot escape the conclusion that they are valueless as evidence upon which to base a finding of dutiable value of the merchandise at bar.

Each of the exhibits in form consists of an affidavit executed before an American consular officer by Jose A. Castillo, reading as follows:

I, Jose A. Castillo, Tehuacan, Pue., Mexico, do hereby state, under oath, that my business is that of Commissioner engaged in buying Mexican Hats for export on a commission and exporting the same to the United States. I do further state, under oath, that the attached statement represents the prevailing wholesale market prices for Mexican Hats for export in the usual wholesale quantities as of the date stated on this quotation.

The invoice covering the merchandise the subject of Reappraisement 113933–A is dated April 18, 1936, and the statement attached to Exhibit 12 is dated the same day. Similarly, the invoice covering the merchandise the subject of Reappraisement 113934–A is dated May 9, 1936, and the statement attached to Exhibit 8 bears the same date.

The statements are in the form of letters addressed by Mr. Castillo to the International Harvest Hat Co. of St. Louis, Mo., and for the purpose of clarity I set them forth in full as follows:

Statement attached to Exhibit 8:

INTERNATIONAL HARVEST HAT CO.,
*St. Louis, Mo., May 9, 1936.*

| | | |
|---|---|---|
| Anisero Grande | 11. 25 to | 11. 50 |
| . . standard | 9. 75 | 10. 00 |
| . . Charrito | 7. 25 | |
| . . Verde | 8. 00 | |
| Santa Getrudes first | 18. 00 | |
| . . . . second | 16. 50 | 17. 00 |
| Ixcateco first | 12. 75 | 12. 80 |
| . . second | 11. 50 | 12. 00 |
| Tlapeno first | 14. 50 | |
| . . second | 13. 00 | 13. 50 |
| Catrin Mixteco | 15. 00 | |
| Patlicha | 16. 00 | |
| Carceleno Chico | 12. 50 | |
| Tlaxiaco comun | 13. 50 | |
| . . blanco | 14. 50 | |
| . . straw binding | 15. 00 | 15. 50 |
| Huapanapan first | 33. 00 | 34. 00 |
| . . second | 31. 00 | |
| Copon corriente | 14. 50 | |
| Charrito Pinto | 11. 50 | |
| Tonalteco | 14. 00 | |
| Pachon comun | 13. 00 | |
| Cacalo first | 50. 00 | |
| . . second | 46. 00 | |
| . . extra | 57. 00 | |
| . . Cabezon | 40. 00 | |
| San Miguel | 25. 00 | 26. 00 |
| Santa Maria | 24. 00 | 25. 00 |
| Copon fino | 36. 00 | |
| Charro refino fancy | 32. 00 | |
| Catrin fancy | 17. 00 | |
| Carceleno fancy | 14. 00 | |
| Chipiteco | 12. 00 | |
| Chilenos grande | 85. 00 | |
| . . chico | 64. 00 | |

JOSE A. CASTILLO,
INTERNATIONAL HARVEST HAT Co.
Received May 13, 1936.
Ans'd. ————.

Statement attached to Exhibit 9:

5 Oriente 102.
Tehuacan, Pue, Mex.
June 14, 1936.

INTERNATIONAL HARVEST HAT CO.,
St. Louis, Mo.

DEAR SIR:

Your two letters of June 5th and May 28th was received.

I just got back Tuesday that is why I didn't send you the quotation for last week.

I had the pleasure to ship by rail June 13th, 40 gross of Tlapenos, 11 gross of Huapanapan and two gross and two dozen of Carceleno to fill up the bale, the documents for this order I mailed yesterday.

The party that has these 470 to 500 gross of Aniseros I wrote you about, is a man that has plenty of money, he bought these hats five years ago for ten pesos and after paying storage on them for five years he won't sell them for $10.50 I would just waste my time trying to get them for he is asking $12.00 per gross, I really don't know if I could get them for $11. the market price of these hats today is $10.50 but his hats are far better than whats on the market today.

You spoke in your letter about San Martin having an arrangement with the bank to buy all the anisero grande, he won't get much from the bank and he is welcome to them for my part, while I was in Huajuapan I had the opportunity to go through their warehouse of aniseros, that is why I say he is welcome to them.

Following is the quotation for the week. Please bare in mind that your buying season is about over but at the same time the Indian also stops his hat making to farm.

| | | | | |
|---|---|---|---|---|
| Anisero Grande | $12. 00 | Anisero Standard | | $10. 50 |
| . . Charrito | 7. 50 | . . Verde | | 8. 50 |
| Tlapeno first | 14. 75 | Copen corriente | | 14. 50 |
| . . second | 13. 75 | Charrito Pinto | | 11. 50 |
| Huapanapan first | 33. 00 | Catrin Mixteco | | 16. 00 |
| . . second | 31. 00 | Carceleno chico | | 12. 50 |
| Ixcateco first | 12. 75 | Santa Getrudes first | | 18. 00 |
| . . second | 11. 75 | . . . . second | | 16. 50 |
| Tlaxiaco binding | 15. 50 | Tonalteco | | 14. 00 |
| . . comun | 14. 00 | Patlicha | | 17. 00 |
| San Miguel | 26. 00 | Santa Maria | | 23. 00 |
| Cacalo first | 50. 00 | Cacalo Extra | | 54. 00 |

Yours very truly,
JOSE A. CASTILLO,
INTERNATIONAL HARVEST HAT CO.
Received June 17, 1936.
Ans'd. ————.

Statement attached to Exhibit 10:

5 Oriente 102.
Tehuacan, Pue. Mex.
May 16, 1936.

INTERNATIONAL HARVEST HAT CO.,
St. Louis, Mo.

DEAR SIR:

Your letters of May 9th and 13th also check for $7,500.00 (pesos) and cable of May 13th was received; thank you very much.

As soon as your wire came, my wife and I worked all night marking the bales, so as to ship them before the railroad strike, there was three freight cars waiting

at the station for lot, but when we got to the station they received them, but wouldn't load the cars, therefore they will be held at the station until the strike is settled, there is nothing to worry about as they are insured, and they will be the first to be shipped when the strike is ended. I really think terms will be met and the strike will be called off by Monday.

Following is the quotation for the week:

| | | | |
|---|---|---|---|
| Anisero Grande | $11. 00 to 11. 50 | |
| .. Standard | 10. 00 | |
| .. Verde | 8. 00 | |
| .. Charrito | 7. 00 | |
| Tlapeno first | 14. 50 | |
| .. second | 13. 00 | 13. 25 |
| Carceleno chico | 12. 50 | |
| Santa Getrudes first | 18. 00 | |
| .. .. second | 16. 00 | 16. 50 |
| Ixcatecos first | 12. 70 | |
| .. second | 11. 50 | |
| Tlaxiaco Comun | 13. 50 | |
| .. with binding | 15. 00 | |
| Copon Corriente | 14. 50 | |
| Patlicha | 16. 00 | |
| Tonalteco | 14. 00 | 14. 25 |
| Pachon comun | 13. 25 | 13. 50 |
| Catrin Mixteco | 15. 00 | |
| .. fancy | 17. 00 | |
| Cacalo extra | 54. 00 | |
| .. first | 48. 00 | |
| .. second | 44. 00 | |
| .. Cabezon | 38. 00 | |
| San Miguel | 24. 00 | 25. 00 |
| Copon fino | 37. 00 | |
| Charro refino fancy | 32. 00 | |
| Santa Maria | 23. 00 | |
| Charrito Pinto | 11. 50 | |
| Chileno chico | 58. 00 | |

Yours very truly,
Jose A. Castillo.
International Harvest Hat Co.
Received May 21, 1936.
Ans'd. ——————.

Statement attached to Exhibit 11:

5 Oriente 102
Tehuacan, Pue. Mex.
June 21, 1936.

International Harvest Hat Co.
St. Louis, Mo.,

Dear Sir:

Following is the quotation for the week.

| | | | |
|---|---|---|---|
| Anisero grande | $12. 00 | |
| .. standard | 10. 70 | |
| .. Verde | 8. 25 to | 8. 50 |
| .. Charrito | 7. 75 | 8. 00 |
| Tlapeno first | 14. 75 | |
| .. second | 13. 50 | |
| Huapanapan first | 33. 00 | |
| .. second | 30. 00 | |
| Ixcateco first | 12. 60 | |
| .. second | 11. 75 | |
| Tlaxiaco binding | 15. 00 | 15. 50 |
| .. commun | 14. 00 | |

| | | |
|---|---|---|
| Copon corriente | $14. 00 | 14. 50 |
| Charrito pinto | 11. 50 | |
| San Miguel | 26. 00 | |
| Catrin mixteco plain | 15. 00 | |
| . . . . fancy | 17. 00 | |
| Carceleno plain | 12. 00 | |
| . . fancy | 13. 00 | |
| Cacalo extra | 54. 00 | |
| . . first | 50. 00 | |
| . . second | 46. 00 | |
| . . cabezon | 38. 00 | 39. 00 |
| Tonalteco | 14. 00 | 14. 25 |
| Santa Maria | 24. 00 | |
| Santa Getrudes first | 18. 00 | |
| . . . . second | 16. 25 | |
| Pachon comun | 13. 00 | |
| Chileno chico | 60. 00 | |
| Copon fancy fino | 33. 00 | |
| Huapanapan special | 45. 00 | |

Yours very truly,
Jose A. Castillo,
International Harvest Hat Co.
Received June 26, 1936.
Ans'd. ————.

Statement attached to Exhibit 12:

International Harvest Hat Co.,
*St. Louis, Mo.*

| | | |
|---|---|---|
| Anisero Grande | $11. 00 | |
| . . Standard | 9. 50 to | 9. 75 |
| . . Charrito | 6. 75 | |
| . . Verde | 7. 50 | |
| Tlaxiaco Comun | 12. 50 | |
| . . straw binding | 15. 00 | 15. 50 |
| Tlapeno first | 14. 50 | |
| . . second | 13. 00 | 13. 50 |
| Copon Corriente | 14. 00 | |
| Charrito Pinto | 10. 50 | 11. 00 |
| Ixcateco first | 13. 00 | |
| . . second | 12. 00 | |
| Huapanapan first | 34. 00 | |
| . . second | 31. 00 | |
| Catrin Mixteco | 14. 00 | |
| Carceleno chico | 12. 50 | |
| Patlicha | 15. 00 | 16. 00 |
| Santa Getrudes first | 18. 00 | |
| . . . . second | 16. 50 | |
| Copon fino | 32. 00 | |
| Chileno grande | 65. 00 | |
| . . chico | 57. 00 | |
| Tonalteco | 14. 00 | |
| Pachon comun | 13. 00 | |
| Cacalo Extra | 57. 00 | |
| . . first | 50. 00 | |
| . . second | 44. 00 | |
| . . Cabezon | 37. 00 | |

Jose A. Castillo,
International Harvest Hat Co.
Received Apr. 24, 1936
Ans'd. ————.

Plaintiff contends that the foregoing statements are quotations based upon sales made by collectors to dealers and others in Tehuacan.

Be that as it may, however, the great weight of evidence introduced by the plaintiff, as well as the defendant, establishes that the sales made by collectors do not respond to the definition of foreign or export value given in section 402 of the Tariff Act. In the opinion reported as Reap. Dec. 4335 I stated:

* * * there is no uniform price at which collectors freely offer their hats for sale at any time, each individual collector setting the price he wishes to get for his hats and pursuing a system of offer and bargaining with various merchants, as the result of which he sells them to the dealer or individual making the highest counter-offer. There does not appear to be any uniformity as to the price finally paid, which depends upon the bargaining abilities of the parties to the transaction.

The testimony of plaintiff's witness Langenberg, for 25 years engaged in the importation of hats and hat bodies such as those in issue from Mexico, on this point is as follows:

Q. How do those collectors dispose of the hats which I have just enumerated in Tehuacan?—A. * * * I have seen these burro trains come into town, anywhere from one to twenty or more, and they go around to the various dealers and try to get bids for the hats. As a rule there is not an active market and they will go around to three, four, or half a dozen dealers. When there is a very active market the dealers will send the buyers to meet the burro trains coming in and will endeavor to get those gatherers to sell their hats to the dealers.

Q. Do those collectors or gatherers offer those hats in Tehuacan to anyone that wants to purchase them?—A. There is no central market which we know as such, but they will do as our southern planters do when they bring their bales of cotton to town. They will go to two, three, or four men, who are known to buy cotton and they will dispose of it to them at the highest price.

* * * * * * *

Cross-examination by MR. VITALE:

X Q. Mr. Langenberg, you say the collectors who go around collecting these hats or hat bodies from the Indians go around and see where they can get the best price; is that right?—A. Not from the Indians. The collectors go around to the dealers.

X Q. When they buy from the Indians, they themselves, the collectors, go around to see the different dealers and see where they can get the best price from the different dealers; is that right?—A. Yes.

X Q. They have no set list price or anything like that? That is, the collectors, they don't have any set price?—A. No, sir.

X Q. And they have no central market, that is, the collectors themselves?—A. No, sir.

The testimony of witness Pellegrino, vice president of the importer in the cases at bar, on this point is as follows:

Q. How do the collectors dispose of the hats, such as Exhibits 1 to 7 and the Nativita hats in Tehuacan?—A. They come in the market in burros and they are met on this road by those interested in buying hats. The man interested in buying will ask what he has, and he will tell him, and then the man interested will ask how much he wants for them and then he will make him a price and if the price is not satisfactory, the collector continues on to find someone who will buy what he has and pay what he wants. He will sell them to the man offering him the most money for the lot.

In his affidavit received in evidence as Exhibit 16 Mr. Castillo states:

The collectors are free to sell their hats to whomsoever they so desire at the best price they can get, and it is their practice to sell their merchandise to the highest bidder, whether the buyer be a manufacturer, dealer, agent, or other person.

Plaintiff contends that the invoiced and entered values, which are claimed to be the prices actually paid to the collectors, represent the foreign value of the hats at the time of exportation, and that the export value was no higher than the foreign value.

Section 402 (c) of the Tariff Act of 1930, defining foreign value, reads as follows:

The foreign value of imported merchandise shall be the market value or *the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers* in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Italics by McCelland, J.]

Export value is defined in section 402 (d) of the same act as follows:

The export value of imported merchandise shall be the market value or *the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers* in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Italics by McCelland, J.]

From the italicized language above it will be seen that the value sections of the tariff act under which both plaintiff and defendant claim, contemplate a free offer of merchandise *at a price*. Such is not the case here. The record clearly establishes that the hats are not offered at a price to all purchasers but that a canvass of dealers is made by the collectors obtaining bids for the hats, and that they are sold to the highest bidder. The prices obtained by the collectors for their hats, therefore, are not such prices as are contemplated by the definitions of foreign and export value, *supra*, and Exhibits 8, 9, 10, 11, and 12, purporting to report such prices are therefore entitled to no weight in determining the value for tariff purposes of the hats in issue.

It might also be well to note at this point that the record clearly establishes that sales by collectors are made on the basis of a transfer of the *entire collection* of hats obtained by a collector in an *unassorted* and *ungraded* state, a lump sum being the consideration for the sale.

The so-called quotations which are part of Exhibits 8, 9, 10, 11, and 12, however, are for hats which have been *sorted* and *graded*, separate prices being quoted for each type and grade.

In its opinion the following observation was made by the Division:

We also call attention in passing to the fact that the record would seem to indicate that the hats upon which the appraisement appears to have been based are of a better quality or grade than the hats in this case. In this respect one of the witnesses testified that they took all the hats he buys from the Indians regardless of the grade or quality, and that they grade the hats themselves, that they purchase everything from the donkey's back, whether good, bad, or intermediate, except those with holes in them.

Examination of the invoices covered by the appeals before me shows, however, that the hats in issue are far from being "everything from the donkey's back, whether good, bad, or intermediate, except those with holes in them." The invoices show that the hats in question have been sorted and graded, and in some instances packed according to size.

In accordance with the order of remand from the division, I have carefully reviewed and weighed all of the evidence in the case, including Exhibits 8, 9, 10, 11, and 12, and I now find as facts:

(1) That the merchandise in issue consists of straw or palm-leaf hats imported from Mexico in April and May 1936.

(2) That the principal market for such hats in Mexico at the time of exportation was Tehuacan.

(3) That at such time such or similar merchandise was not freely offered for sale to all purchasers in Tehuacan by the collectors of such hats.

(4) That at such time such or similar merchandise was freely offered for sale both for home consumption and for exportation to all purchasers in Tehuacan by dealers in such hats.

(5) That the prices at which such or similar merchandise was sold or offered for sale in Mexico for home consumption or for exportation to countries other than the United States were lower than the prices at which it was sold for exportation to the United States.

(6) That at the time of exportation in each case there was a price for each item at which such merchandise was freely offered for sale for exportation to the United States to all purchasers in usual wholesale quantities and in the ordinary course of trade by the dealers in such hats in Tehuacan, and that such price equalled the appraised value in each case.

I conclude as matters of law:

(1) That in each case the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, of the hats in issue at the time of exportation was higher than the foreign value, as that value is

defined in section 402 (c) of the same act, and was the proper basis of value of the merchandise.

(2) That such export values were the appraised values.

Judgment will issue accordingly.